## TERM OF A GAS AND OIL LEASE.

Circuit Court of Wood County.

HENRY DIEHL v. OHIO OIL CO.

Decided, October 29, 1892.

*Gas and Oil—Lessees Held to an Extension of Time—Where Oil Has been Discovered, but Not in Paying Quantities, and There is No Limitation as to Time Except that a Well Shall be Completed Within One Year.*

Where a gas and oil lease provides that one well shall be completed within a year, and the lessees make a cash payment of $1,500 on the date the contract was executed and expend as much as $2,200 within the year in drilling a well, which yielded oil but not in paying quantities, they are entitled to an extension of time within which to make further search for gas and oil; and upon refusal of the lessees to pay rental demanded on the theory that "no well had been completed" injunction will not lie against them, within five months of the completion of the well that was drilled, to restrain them from entering upon the premises and operating for gas and oil.

*James & Seney,* for plaintiff.
*Cook & Troup,* contra.

SCRIBNER, J.; BENTLEY, J., and HAYNES, J., concur.

Appeal from Wood Common Pleas Court.

It appears that on July 26, 1890, the plaintiff, Deihl, being the owner of certain lands situate in Wood county, more particularly described in the petition in this case, executed and delivered to one William Fleming the instrument of which the following is a copy:

"In consideration of the sum of eleven hundred dollars, the receipt of which is hereby acknowledged, Henry Deihl, of Pemberville, first party, hereby grants unto William Fleming, of

Oil City, Pennsylvania, second party, his heirs and assigns, all the oil and gas in and under the following described premises, together with the right to enter thereon at all times for the purpose of drilling and operating for oil, gas or water, and to erect and maintain all buildings and structures, and lay all pipes necessary for the production and transportation of oil, gas or water, taken from said premises. Excepting and reserving to first party the one-sixth part of all oil produced and saved from said premises, to be delivered in the pipe line free of cost with which second party may connect his wells, namely: (Here follows a description of the land.)  To have and to hold the above premises on the following conditions:

"If gas only is found, second party agrees to pay $300 each year in advance for the product of each well while the same is being used off the premises and first party to have gas free of cost to heat three stoves in dwelling-house during same time.

"Whenever first party shall request it, second party shall bury all oil and gas lines and pay all damages done to growing crops and tiling by reason of burying and removing said pipe lines or otherwise, said lines to be put below plow depth, the damages to be decided by three disinterested parties.

"No well shall be drilled nearer than three hundred feet to the orchard, house or barn on said premises, and no well shall occupy more than one acre.

"In case no well is completed within one year from this date, then this grant shall become null and void, unless second party shall pay to first party, twelve hundred and sixty dollars, in advance, for each year such completion is delayed, the rental to continue until the oil is marketed, if produced in paying quantities.

"The second party shall have the right to use sufficient gas, oil or water, to run all necessary machinery for operating said wells, and also the right to remove its property at any time.

"It is understood and agreed that second party is to keep all gates closed going to and coming from the place of operation. If oil or gas can not be found in paying quantities then this lease shall be returned to first party."

Then follows some stipulations in the lease as to having the agreement and conditions extend to the heirs, executors and assigns of the respective parties.

The statement in this lease is that the grant is made by Deihl, the owner of the land, in consideration of $1,100, while the proof shows there was in fact paid to him $1,500.

By its provisions, as will be seen, one well was to be completed within one year; that year would expire on July 26, 1890. One well was completed on June 28, 1890, which was within the time limited. This well was drilled as shown by the testimony at an expense of about $2,200. It produced oil, but not in paying quantities. A tank was built and connected with the well, but not with any pipe line. The oil to the extent of about twenty-six barrels was saved and removed about the month of October, 1890. The testimony on behalf of the defense tends to show that a check for the portion due this plaintiff for oil was tendered to him. The plaintiff denies, however, that any such tender was made. Nothing further was ever done with this oil.

On August 12, 1890, which was less than a month after the expiration of the year, and again on the twenty-fifth of the same month, and on the first of October, 1890, according to the testimony of the plaintiff, he demanded that either the rental of $1,260, which he claimed was due him, should be paid, or his lease should be surrendered. The lease, I should say, by assignment became the property of the defendant, the Ohio Oil Company, and all that was done under the lease was done by that company.

The latter company refused to pay the rental claimed, and also refused to return the lease, and the plaintiff on November 27, 1890, brought this suit. This was about four months after the expiration of the first year mentioned in the lease within which the first well was to be sunk.

The plaintiff in his petition in this case sets out, in substance, as I have stated, the lease, the demand that was made, the refusal to pay the $1,260 or return the lease, and avers in conclusion that the defendants still claim to have some beneficial right or interest in said lands under said lease, and by asserting and threatening the same, cast a cloud upon the title of plaintiff in the peaceable use and occupation of said lands thereby greatly diminishing the value thereof and causing great and irreparable damage, loss and injury to the plaintiff. That the defendant still claims the right under said contract to enter upon said lands, to erect derricks, drill wells, lay pipes and remove oil or gas

therefrom, and will, unless restrained by this court, enter thereon
for such purposes and carry the same into execution, thereby
causing plaintiff great and irreparable damage, injury and an-
noyance.

Wherefore, plaintiff prays for an injunction restraining the
said defendant from asserting any further right, title or interest
in said lands under said contract, or otherwise from entering
upon said lands, and from proceeding further to erect derricks,
drill wells, lay pipes, or in any way molest or disturb plaintiff
in the peaceable possession and enjoyment of said lands; that
the lease may be declared null, void and forfeited, that the same
may be surrendered to plaintiff and the order of this court may
cancel the same of record; and that the plaintiff may have all
other and further relief in the premises.

It will be noticed that there is no limitation contained in this
lease as to time. That is, so far as these provisions are con-
cerned, the lessee may operate upon the lands under its terms ex-
cept when oil or gas can not be found in paying quantities, then
this lease shall be returned to the first party. The only other
stipulation relating to the termination of the lease, is found in
this clause:

"In case no well is completed within one year from this date,
then this grant shall become null and void, unless second party
shall pay to said first party $1,260, in advance, for each year
such completion is delayed, the rental to continue until the oil
is marketed, if produced in paying quantities."

The consideration to the lessor, the plaintiff, is first, the sum
of $1,500. An absolute payment of $1,500 in cash on the day
the contract was entered into. Further down there is reserved
to the plaintiff, the lessor, the one-sixth part of all the oil pro-
duced and saved from said premises to be delivered in the pipe
line free of cost, to which second party may connect its wells.

These are the two items of compensation for the privileges
granted, provided for in the lease. First, $1,500 cash; and sec-
ond, the reservation of one-sixth of the oil to be delivered into
tanks or pipe lines, and third, if gas only is found, the second
party is to pay $300 for the product of each well and first party
to have gas free of cost.

These are the considerations moving to the plaintiff, the lessor, provided in the lease: First. The consideration of $1,500 paid for the grant. The reservation to the plaintiff of one-sixth part of the oil to be delivered in tanks. Then it is further provided, and this is the only other provision relating to compensation:

"In case no well is completed within one year from this date, then this grant shall become null and void, unless second party shall pay to said first party twelve hundred and sixty dollars, in advance, for each year such completion is delayed, the rental to continue until the oil is marketed, if produced in paying quantities."

Now there was a well completed within one year. The lessees strictly in compliance with the terms of their contract, and at an expense of about $2,200, went forward and drilled, and completed a well within the time stipulated in the contract. It follows in our judgment that this rental of $1,260 is not due under this stipulation in the contract.

It was to be paid on condition, or in case no well is completed within one year; but a well was completed within one year. In case it was not completed within a year then this rental was to be paid each year such completion was delayed. That rental was the condition in the lease, one condition for the payment of this rental was not only that the well should not be completed, but that oil should not be produced, or at least the continuance of the payment of this rental was to depend upon the production of oil in paying quantities; then in case oil and gas can not be found in paying quantities, then this lease is to terminate.

Now we are clear that this plaintiff, this lessor, has a right within a reasonable time to make his election, but it would depend very much upon the circumstances to put an end to this lease providing the lessee does not proceed to perform the stipulations of the contract relating to him; but now the year within which this well was to be completed extended until July 26, 1890, and June 27, 1890, a well had been completed at a large expense; and on the twelfth of August, on the twenty-fifth of August and in the month of October of the same year, all within four or five months from the sinking of the first well, this plaintiff is de-

manding that he shall be paid the sum of $1,260 or the lease should be surrendered to him.

Now upon careful consideration of the terms and conditions of this lease, we are of the opinion that he was not entitled to compliance with either of these demands. He was not entitled to the payment of the $1,260, because the completion of the well had not been delayed; and he was not entitled to the return of the lease because the lessee had a reasonable time to make a further effort to find oil or gas; and we think to require the lessee to proceed within four or five months from the time of sinking of the first well and deprive him of further right to search for oil or gas, would be an unreasonable application of the right claimed by the plaintiff in the contract to terminate the lease.

The defendant's witnesses testify that shortly before the bringing of this suit they were about to proceed, and plaintiff in fact alleges that they are about to proceed to make a further search for oil or gas, and alleges that unless prevented by the injunction of the court, they will enter upon this land and make further search for oil or gas.

Now in view of all the circumstances, we are of the opinion that the comapny has a right to reasonable further time to enter upon the land and prosecute this work. That having expended $1,500 first, and then expending $2,200 on this lease, that they ought not be shut off from proceeding with their work, and certainly not on the ground that the defendant has not paid $1,260, which we do not think it should pay, and our conclusion is, that the equity of the case is with the defendant, and the petition must be dismissed with the plaintiff's costs.